Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/16/2019 09:07 AM CDT

- 390 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE ESTATE OF SEDLACEK
Cite as 27 Neb. App. 390

In re Estate of Leonard John
Sedlacek, deceased.
James Psota, Personal Representative of the Estate
of Leonard John Sedlacek, deceased, appellee,
v. Valley County, Nebraska, appellant.

___ N.W.2d ___

Filed July 16, 2019.    No. A-18-836.

1. **Decedents' Estates: Taxation: Appeal and Error.** On appeal of an inheritance tax determination, an appellate court reviews the case for error appearing on the record.
2. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
3. **Decedents' Estates: Parent and Child: Taxation: Appeal and Error.** Factual findings necessary in determining whether the requisite acknowledged parent-child relationship of Neb. Rev. Stat. § 77-2004 (Reissue 2018) exists should be reviewed for sufficient evidence and should not be disturbed on appeal unless clearly wrong.
4. **Decedents' Estates: Taxation: Statutes: Proof.** Statutes exempting property from inheritance tax should be strictly construed, and the burden is on the taxpayer to show that he or she clearly falls within the language of the statute.
5. **Decedents' Estates: Parent and Child: Taxation.** The following factors serve as appropriate guideposts to the trial court in making a determination of an acknowledged relationship of a parent under Neb. Rev. Stat. § 77-2004 (Reissue 2018): (1) reception of the child into the home and treatment of the child as a member of the family, (2) assumption of the responsibility for support beyond occasional gifts and financial aid, (3) exercise of parental authority and discipline, (4) relationship by blood or marriage, (5) advice and guidance to the child, (6) sharing of time and affection, and (7) existence of written documentation

- 391 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE ESTATE OF SEDLACEK
Cite as 27 Neb. App. 390

evincing the decedent's intent to act as a parent. This list of guideposts is not exhaustive, nor will every factor necessarily be present in each case. A trial court should consider all pertinent factors in arriving at that determination.

6. \_\_\_\_: \_\_\_\_: \_\_\_\_. The law recognizes that although a natural parent-child relationship may exist elsewhere, if the parties regard each other in all of the usual incidents and relationships of family life as parent and child, the benefits of the inheritance tax statute flow.

Appeal from the County Court for Valley County: Tami K. Schendt, Judge. Affirmed.

Brandon B. Hanson for appellant.

Amanda L. Tobey, of Peterson Legal Services, P.C., L.L.O., for appellee.

Pirtle and Bishop, Judges.

Pirtle, Judge.

### INTRODUCTION

Valley County (County) appeals from an order entered in the county court for Valley County finding that Leonard John Sedlacek stood in place of a parent for James Psota and that thus, Psota was entitled to a "Class 1" inheritance tax rate for property inherited from Sedlacek's estate. The County argues that there was not sufficient evidence of a parent-child relationship between Psota and Sedlacek and that therefore, the county court erred in granting Psota a Class 1 inheritance tax rate. For the reasons that follow, we affirm.

### BACKGROUND

Sedlacek was a longtime farmer in Valley County, Nebraska. Psota met him when he was around 10 years old and Sedlacek would come to help on the family farm. Psota's mother died in approximately 1991, and it was at this time that he and Sedlacek formed a closer relationship, with Psota stating it was like he had two fathers. Sedlacek was divorced and had several children who were distant and rarely in contact with him.

- 392 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE ESTATE OF SEDLACEK
Cite as 27 Neb. App. 390

During the years that followed, Sedlacek would attend holiday parties, birthdays, and church programs—even attending Psota's wedding. He would regularly be invited to the Psota home for dinner with Psota's family. Psota and his family would likewise spend time with Sedlacek at his home for meals. Psota and Sedlacek also worked closely with each other as they were both farmers, with Psota seeking advice from Sedlacek and each helping the other when needed.

As Sedlacek got older and needed additional support, Psota provided both financial and emotional support. He assisted in paying for Sedlacek's utilities, telephone, and other bills, as well as assisting him in paying off loans to prevent him from losing his farm. Psota also rode with Sedlacek in an ambulance for needed surgery when Sedlacek initially refused to go. Sedlacek was eventually required to enter a nursing home due to his failing health, and Psota acted as a "co-power of attorney." Psota was the primary contact for the nursing home if it had any issues with Sedlacek, and Psota would assist them regularly. As Sedlacek's health further declined, Psota contacted Sedlacek's stepchildren to let them know about his condition—all of whom declined to visit him in his final weeks. Sedlacek passed away in August 2017, and Psota handled the funeral arrangements. In his will, Sedlacek specifically noted that he did not wish his "children and other relatives" to share in his estate and left the entirety of his estate to Psota.

On July 24, 2018, Psota filed a petition for determination of inheritance tax. Psota asked the court to consider him a child of Sedlacek, because Sedlacek had stood in the acknowledged relation of a parent pursuant to Neb. Rev. Stat. § 77-2004 (Reissue 2018). A hearing was held on July 25, with five witnesses testifying. The court entered an order on July 31, determining that Sedlacek had stood in the acknowledged role of a parent pursuant to § 77-2004 and granted the petition for determination of inheritance tax with Psota receiving a Class 1 inheritance tax rate. It is from this order that the County appeals.

- 393 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE ESTATE OF SEDLACEK
Cite as 27 Neb. App. 390

## ASSIGNMENTS OF ERROR

On appeal, the County assigns that the county court erred in determining that Psota was entitled to a Class 1 inheritance tax rate as dictated by § 77-2004 and in determining there was sufficient evidence that Sedlacek stood in place of a parent for Psota.

## STANDARD OF REVIEW

[1,2] On appeal of an inheritance tax determination, an appellate court reviews the case for error appearing on the record. *In re Estate of Hasterlik*, 299 Neb. 630, 909 N.W.2d 641 (2018). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

[3] Factual findings necessary in determining whether the requisite acknowledged parent-child relationship of § 77-2004 exists should be reviewed for sufficient evidence and should not be disturbed on appeal unless clearly wrong. *In re Estate of Hasterlik, supra*.

## ANALYSIS

[4] The County argues that there was not sufficient evidence to find that Sedlacek stood in place of a parent for Psota. Statutes exempting property from inheritance tax should be strictly construed, and the burden is on the taxpayer to show that he or she clearly falls within the language of the statute. *In re Estate of Breslow*, 266 Neb. 953, 670 N.W.2d 797 (2003). Section 77-2004 provides that "any person to whom the deceased for not less than ten years prior to death stood in the acknowledged relation of a parent" shall receive an inheritance tax exemption of $40,000 and shall be taxed at the rate of 1 percent of the clear market value of the property thereafter.

[5] The Nebraska Supreme Court has identified the following factors as appropriate guideposts to the trial court in making a determination of an acknowledged relationship of

- 394 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE ESTATE OF SEDLACEK
Cite as 27 Neb. App. 390

a parent under § 77-2004: (1) reception of the child into the home and treatment of the child as a member of the family, (2) assumption of the responsibility for support beyond occasional gifts and financial aid, (3) exercise of parental authority and discipline, (4) relationship by blood or marriage, (5) advice and guidance to the child, (6) sharing of time and affection, and (7) existence of written documentation evincing the decedent's intent to act as a parent. *In re Estate of Kite*, 260 Neb. 135, 615 N.W.2d 481 (2000). However, this list is not exhaustive, nor will every factor necessarily be present in each case. *In re Estate of Ackerman*, 250 Neb. 665, 550 N.W.2d 678 (1996). A trial court should consider all pertinent factors in arriving at that determination. *Id.* The county court specifically identified two additional factors as being important in its consideration: the "'community perception'" factor and the support provided by Psota to Sedlacek.

[6] The County's primary argument is that, even if there were a parent-child relationship, such a relationship did not exist for 10 or more years as Psota's biological father passed away in 2013. However, "'The law recognizes that although a natural parent-child relationship may exist elsewhere, if the parties regard each other in all of the usual incidents and relationships of family life as parent and child, the benefits' of the inheritance tax statute flow." *In re Estate of Ackerman*, 250 Neb. at 672, 550 N.W.2d at 683, citing *Estate of Larson*, 106 Cal. App. 3d 560, 166 Cal. Rptr. 868 (1980). See, also, *In re Estate of Kite, supra.* As such, so long as the relationship between Psota and Sedlacek was of a parent-child nature prior to the death of Psota's biological father, it will be included for the purposes of establishing the required 10 years.

The County next argues that there was not sufficient evidence to find that there was a parent-child relationship between Psota and Sedlacek. It concedes that the fifth factor set forth in *In re Estate of Ackerman*, providing advice and guidance, and the sixth factor, sharing of time and affection, were present in this case and that the evidence showed that Psota and Sedlacek

- 395 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE ESTATE OF SEDLACEK
Cite as 27 Neb. App. 390

had a close relationship. Psota concedes that the fourth factor, that the decedent and devisee are related by blood, and the seventh factor, written documentation of decedent's intent to act as a parent, were not present in this case. As such, our analysis focuses on the other three factors, as well as the additional factors considered by the county court.

The first factor listed in *In re Estate of Ackerman*, reception of the child into the home and treatment of the child as a member of the family, is claimed by both parties. Initially, residency in the home of the decedent was required by the statute to demonstrate a relationship. *In re Estate of Ackerman, supra.* However, this requirement was removed and this factor is resolved based on whether the individuals treated each other as family such as spending holidays together and sharing meals together. See *In re Estate of Kite, supra.* The County argues that because Psota never resided for even a temporary amount of time with Sedlacek, this factor weighed in favor of no relationship existing. While it is true that Psota did not reside in Sedlacek's home at any point, the testimony showed that Sedlacek had invited Psota and Psota's family into his home on many occasions for various meals, visits, and holidays and that Sedlacek regularly visited the Psota home for meals and holiday visits over a period of more than 10 years prior to his death.

The second factor listed in *In re Estate of Ackerman*, assumption of the responsibility of support beyond occasional gifts and financial aid, is also claimed by each party. We note that this does not mean that the parent must accept a legal obligation for support, because this would rarely exist where the child was an adult. See *In re Estate of Ackerman*, 250 Neb. 665, 550 N.W.2d 678 (1996). However, courts have considered whether the parent provided support in other ways such as providing room and board or paying for classes. *Id.* It is undisputed that Psota never accepted financial aid from Sedlacek, although he testified that Sedlacek had offered it to him.

- 396 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE ESTATE OF SEDLACEK
Cite as 27 Neb. App. 390

The third factor listed in *In re Estate of Ackerman*, exercise of parental authority and discipline, has been similarly questioned when applying it to an adult. It has been recognized that after a child has established his or her independence, it is not unusual that the level of discipline is slight. *Id.* The County argues that the way Sedlacek treated Psota did not rise to the level of discipline for the purpose of this factor. Both Psota and the County agree that the testimony showed that Sedlacek would criticize Psota and would tell him to quit doing something if he "step[ped] out of line." Further, Psota testified that Sedlacek had disciplined Psota's children.

The final two additional factors identified by the county court, "community perception" and the support provided by Psota to Sedlacek, did have specific findings made by the court. The court found that testimony from individuals in the community familiar with Psota and Sedlacek was weighed in favor of treating the relationship between them as familial because the members of the community perceived them as being father and child. A witness who knew Sedlacek for over 10 years testified that he initially thought Psota and Sedlacek were father and son and that they presented themselves as such to the community. Another witness similarly testified that having known them both for over 13 years, she regarded Sedlacek as a father figure to Psota. She also testified that Sedlacek's relationship with Psota's children was one of a grandfather with grandchildren. A witness who worked at the nursing home Sedlacek was placed at testified that she had known Psota and Sedlacek for a year and that she believed they were father and son until she was told otherwise just a few months before Sedlacek passed away. Lastly, another witness also testified that she had known the two for over 15 years and that they had a father-son relationship. Of particular note, she testified that Sedlacek referred to Psota and Psota's family when asked about his family.

The second factor the county court identified was the support provided by Psota to Sedlacek. The court specifically

- 397 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE ESTATE OF SEDLACEK
Cite as 27 Neb. App. 390

noted that the fact Psota cared for Sedlacek, supported him financially and emotionally, and provided considerable care for him during the end of his life weighed in favor of treating the relationship as that of a parent and child. Psota testified that he helped Sedlacek pay his utilities, telephone, and other bills, as well as assisting him in paying off loans to prevent him from losing his farm. This financial assistance was also testified to by one of the witnesses. As Sedlacek aged, Psota assisted him on his farm, rode with him to his medical appointments, and regularly visited him every other day when he was in the nursing home.

While it is clear that some of the factors are either less relevant in this case or not present, the remaining factors and the evidence supporting them are sufficient to find that there was a parent-child relationship between Psota and Sedlacek. Certainly, we cannot say that the county court's conclusion was clearly wrong in light of the substantial evidence that Sedlacek viewed Psota as his family, as did the rest of the community, and that both Psota and Sedlacek treated each other as such, providing emotional and financial support for one another for a period of more than 10 years prior to the passing of Sedlacek. Therefore, the order of the county court is supported by sufficient evidence.

## CONCLUSION

In conclusion, we find that there was sufficient evidence to support the county court's determination that a parent-child relationship existed for the purposes of § 77-2004 and that Psota should be entitled to a Class 1 inheritance tax rate. The order of the county court is affirmed.

Affirmed.

Moore, Chief Judge, participating on briefs.